Good morning, Your Honors. Todd Burns, Federal Defender of San Diego, on behalf of Mr. Vela. Thank you. Please proceed. It seems to me that the easiest issue in this case is the fact that this Court has clearly held willfulness is an element of 111 assault. And that element was not charged in the indictment, and it was not instructed, the jury was not instructed on that element. That would seem to lead to reversal right there. The problem is I don't think that gets around the bigger issue with respect to the District Court's preclusion of a mental capacity defense on the elements of the offense. How do you get around Jim? Well, Jim itself says that willfulness is an element. Of what? Of 111 assault. Doesn't Jim say that that's a general intent crime? It does go on to say it's a general intent crime. What Jim does is Jim says, relying on this Court's Dupree opinion, which was with respect to Section 113, it says that by using assault, Congress incorporated the meaning of common law assault. And common law assault requires willfulness, and willfulness requires a bad purpose. That's all in Jim. And Jim says if we were to stop there, based on the plain language of the statute, it would be a specific intent offense. But it didn't stop there, right? No, it then went on and made a policy choice and said, well, Congress meant to protect federal officers and federal functions, so despite the language of the statute, we will construe the statute as being a general intent offense. It never said that willfulness isn't an element. It never said that willfulness doesn't equal bad purpose. So it made a policy choice, but it certainly left intact that willfulness is an element. Willfulness wasn't charged. It wasn't instructed on. Now, as far as – and that's a whole separate issue. That's the first issue. What's your best case authority for the proposition that a general intent crime requires an instruction of willfulness? Aren't those mutually exclusive? Well, my argument for that goes as follows, and this is summarized briefly in the bottom page 22 of my reply brief. But do you have a case, a case that supports your argument? I understand what your argument is, but what's your best case authority? Well, it takes a couple steps, and it involves Supreme Court case law. As I set out in my papers, I believe that there are several bases on which Jim has been undermined, including by this Court's en banc decision in Garcetta's alibari and a number of Supreme Court cases. But Jim can remain intact to the extent that it holds that voluntary intoxication defense is not permissible to 111 through the following steps, which are thoroughly supported in Supreme Court case law. In the Supreme Court case Bailey, the Court talked about the fact that this general intent, specific intent distinction is not useful and causes a lot more problems than it solves. And we see that with the fact that there's a strong circuit split with respect to whether or not 111 is general intent or specific intent. The first, fifth, and tenth circuits hold that it's a specific intent offense. The ninth circuit effectively, as Jim said, it sure looks like a specific intent offense based on the plain language, but we're going to trump that by looking at congressional purpose, which, again, I think is an unfounded sort of approach to statutory construction. But accepting that approach, the Supreme Court has said, look, we should eschew general intent, specific intent. It doesn't help. They said that in Bailey. In Fiola, they implied, and in Bailey, they indicated that each element of an offense should be assessed to determine the culpability that applies to that offense. So, therefore, in Fiola, the defendant doesn't have to know that the officer assaulted is a federal officer, but does have to have some sort of mens rea with respect to the alleged assault. And Fiola quite clearly says what that mens rea is. After saying that the defendant doesn't have to know the identity of the officer as a federal officer, they say this interpretation poses no risk of unfairness because the assault is committed with a wrongful purpose. They say he nonetheless knows from the very outset that his planned course of conduct is wrongful. And for that reason, there's an exception in Fiola. If the defendant doesn't know the officer is a federal officer, and the officer comes up and doesn't identify himself, and the defendant assaults the officer because the officer believes that he's being assaulted himself, that's a defense to 111, and that's because the defendant's conduct isn't wrongful. Now, here, the defendant's conduct clearly wasn't wrongful because the jury found, not on the element, but by clear and convincing evidence that he didn't know the nature and quality or the wrongfulness of his conduct. But he did know that it was an officer, presumably, maybe. Well, I guess it depends what you find is wrapped up in the jury finding by clear and convincing evidence. If he knew it was an officer, if he thought it was someone out to get him, it's not clear. You know, he clearly was very psychotic and suffering from a severe psychotic episode. But the point is that the Supreme Court has said that there is a wrongful aspect of the mens rea for 111. And subsequently, also in – I don't know whether we're saying that – or the cases are saying that there's a wrongful element when it's an officer that's obviously the object of the attack. Well, what the Supreme Court says is, in FIOLA, he doesn't – the defendant doesn't have to know that it's an officer. No. And this doesn't create a problem because it's not like we're going to punish him. I'm just wondering whether in this circuit – and we forget the insanity defense for a moment and just say it – in this circuit, I could imagine that we could look at the cases you cite and then Jim and say, well, our rule is that assault generally requires malice, but when it's a federal officer, it's a general-intent crime. Well, I know this – When it's obvious that it's a federal officer being attacked. In other words, preserving the policy choice that Jim made, which, rightly or wrongly, probably binds us if it's still there. Well, I don't know that it binds you because the policy choice is based on voluntary intoxication. And courts have recognized for hundreds of years that you can't defend based on voluntary intoxication because there's a wrongfulness aspect in becoming intoxicated. Here, being mentally ill, there's no wrongfulness aspect to that. And that's why I think that this case could rule – the court could rule that there would be a mental capacity defense in this context, but there's not a voluntary intoxication defense because the defendant's conduct under FIOLA has to be wrongful. And the defendant's conduct clearly here wasn't wrongful, and he was precluded from presenting that defense, which is inconsistent with the Supreme Court's holding in both Clark and in Egelhoff when Justice O'Connor's dissent is coupled with Justice Ginsburg's concurrence. If a jurisdiction allows a mental capacity defense on the elements, which in the Ninth Circuit, that is allowed, and the evidence would have refuted or the defense would have refuted that element, which here, if there has to be a wrongful aspect to the person's behavior, it would, then it's a due process violation. The relief you get if you convince us of a new trial on the assault? Well, that's why I think that the court – the fact that the government just didn't charge the element and there wasn't the instruction on it isn't the only thing that has to be decided because the government may want to go back and have a retrial to get back to basically the status quo where we are now. They could never do anything better than a not guilty by reason of insanity because that issue is raised judicata. The jury has decided that. That's been fully litigated that he was insane at the time. They could do worse, which would be an outright acquittal. I don't think it would need to go back for a new trial because I think inherent in the jury's verdict, the insanity verdict, which was the burden was on Mr. Vella by clear and convincing evidence, he couldn't have understood the wrongfulness of his conduct, so therefore the government could not get a conviction beyond a reasonable doubt on that mens rea. And because of all those problems, it seems to me that you ought to, rather than appeal this sentence, find another other way to challenge what you now want to challenge. How do you get this on an appeal of the sentence? How do you get here? What's your right? Your question is jurisdiction, right? Yes. Well, I think it's straightforward. There's a great deal of discussion in my papers, but to summarize it, there certainly is a final judgment. There's a final judgment, but there is no imposition of a sentence. There's nothing here that suggests there is. The best we can find is he had a not guilty by reason of insanity and a commitment under 18 U.S.C. 4243. So why don't you have to come to us by habeas? Well, first of all, just practically, I don't know why it would make sense to proceed with habeas first. Normally you proceed with a direct appeal if you try to go to habeas. No, but a direct appeal if you didn't win, but you won. Well, I don't perceive it as winning. He's aggrieved. Well, you didn't ever say, don't put that in there, judge. Don't allow that to be there. You never did fight the fact that he was going to get this kind of a judgment, not guilty by reason of insanity, though you wanted something different, better, that you did not ever say, well, don't ever let that happen. Well, we had no choice. The alternative was, I guess, to roll over and let him be convicted or to plead guilty. Oh, right, and let him go to court and see if he could get out otherwise, which he wouldn't have. It's what you're saying. Well, right now he is subject to indefinite, potentially lifetime supervision with various conditions. Unless he brings a habeas challenge. Well, but I don't understand why it would make sense to go to a habeas challenge, addressing these same issues to the same court that has already definitively ruled on them, rather than bringing them on direct appeal. I mean, the final judgment rules is meant to present piecemeal litigation. This is not piecemeal litigation. This case is over with respect to these issues. And he is aggrieved in that he is subject to perpetual supervision. Amongst the things that he's subject to is heavy medication, which renders him almost incapable of doing anything other than sitting around the house all day because he can't focus, he can't operate a motor vehicle, he can't attend vocational training. He certainly is aggrieved. And the Supreme Court in Pobeldick and several other cases says, look, the final judgment rule in the provisions for jurisdiction over appeal shouldn't be construed such that the person is forever prevented from pursuing their claims. And I can't see any authority for the idea that though these claims are presented in the district court, in the context of this case, I should skip the direct appeal and go directly to habeas. Now, I could understand if Your Honor might be saying, well, at some point I should approach the district court about changing the conditions of supervision, that sort of thing. And that may happen down the road. But the issue here is whether or not these rulings deprived him of the appropriate verdict, which was a complete not guilty, rather than finding that he was criminally culpable, but because he was insane, he wouldn't be held criminally responsible. Well, I appreciate where you're going. What I was trying to do, it seems to me there are things that one can do in the lower court about changing the conditions. And there are things that one can do about that. But if one really wants to suggest that this is a final judgment, I'm having a tough time getting around Flanagan. And I guess that's my worry. Because there was no sentence, and we're not there, and you've got a lot of precedent out here, but I've got to find my way to the place where we've got to be. Well, Flanagan says ordinarily there must be a sentence. And in 99.9% of cases, of course, there will be a sentence because the person will have been convicted. Otherwise, if they're acquitted, they won't even be outright acquitted. They're not subject to supervision. They won't be appealing. But Flanagan says ordinarily. And this is, of course, not ordinary, number one. Number two, Flanagan was issued before the federal not guilty by reason of insanity statute was passed. So not only would it be dicta with respect to this situation, it would be dicta about a regime that didn't even exist at the time. Counsel, if we agree with you, how would our holding read? What would we hold? Well, again, I think there are a variety of reasons why Jim is undermined. I'm asking you, what would we order the district court to do? What would we say about how the district court should proceed in this case? Well, I don't know that it would be appropriate necessarily to give direct advice as to how the district court would proceed because it would depend on how the government decided to proceed. But, again, I think. What do you want? You want the conviction reversed and remanded for further proceedings? Is that what you envision happening? I think the most appropriate thing is to say Theola made clear that there needs to be a wrongful purpose. Mr. Vella was prevented from presenting that defense, that there was not a wrongful purpose so he was not guilty on the elements. If you're not guilty on that, then what happens? And given what's inherent in the verdict that the jury rendered, which is by clear and convincing evidence, Mr. Vella did not understand the nature and quality of the wrongfulness of his acts, that necessarily if he had not been precluded from presenting the defense on the elements in which the government would have borne the burden beyond a reasonable doubt, Rule 29 is the appropriate answer. You're asking us to acquit him, in other words. You want us to acquit him. I would have asked the jury for that if I had been given the opportunity, but I wasn't. I understand. I'm just trying to understand what you're asking us to do. You're essentially asking us to render a verdict of acquittal. I think that's the most appropriate thing. I think alternatively the court could say he was prevented from presenting a defense in violation of due process or Jim is undermined for all these reasons either way. And if the government seeks to retry him, he should be able to present that defense with the understanding, of course, that once you get to the point of the insanity issue, that's collaterally stopped. So the government could retry him and they could either get back to not guilty by reason of insanity or Mr. Vella could be outright guilty. See, I have some sympathy with your statement that it makes sense to permit an appeal, but what you're appealing is the semi-judgment you got, which is not guilty by reason of insanity. And if there's anything final to challenge on appeal, it's that verdict. And if we overturn that verdict, just like any other conviction that we overturn, it doesn't have any estoppel effect. The whole thing would be tried all over again. And I'm not so sure that that's the result that's of best interest to your client. Well, that's certainly not what I want. And it would seem to me it's obviously that issue preclusion applies with respect to whether he was insane. You know, you're challenging a judgment, and it's a little different from most final judgments, but I can see an argument that not guilty by reason of insanity because of the consequences that follow from it is the kind of a judgment that ought to be able to be appealed. But you're not really challenging that judgment from what I hear. If we consider your appeal and agreed with you and reversed it, it's gone, and the government can start all over again from scratch, and I don't think it's bound by what happened that we just overturned. Well, if the court rules in any of the ways in which I'm asking the court to rule, it does nothing to undermine the jury's finding, which was fully litigated, that Mr. Vella did not understand the nature and quality of the wrongfulness of his acts. That's fully litigated by clear and convincing evidence. Whatever the court does with respect to these issues does not undermine that finding at all. Because you say that doesn't make it so. Well, I don't understand how any of the issues that I've raised touch on that finding. There's no question. I mean, I guess that's why I would like you to respond specifically to Judge Canby's question, because it seems to me that if I give you the jurisdiction and say you can challenge the verdict here and I undo it, nobody's bound by anything in it. Well, the Supreme Court undoes it. I mean, you're not challenging. Otherwise, there's nothing in that finality that I can undo. All you're trying to do is have me get down here and pick and choose issues that are involved in the trial, but the finality of the judgment is what brings you up to me. And in order for me to pick and choose all these things in the middle without disturbing the finality, I don't find any case law for that. The Supreme Court in Clark makes clear, and this is absolutely consistent with the jury instructions given, that when you get to an insanity verdict, there are essentially two steps. First, the jury is given the elements of the offense and says, do you find that the defendant committed the elements of the offenses, that he committed this crime? That's exactly what was done here. Then there's a whole other step, which is even though you find he committed this crime, do you find that he was insane such that he won't be held criminally responsible? And that's not in the jury instruction, but that's the progression. First of all, is he guilty of committing a crime, but then is he insane? This is totally different than a diminished capacity offense, which just goes to the elements and there's not that second part of it. So what's being appealed here is the conviction. There was a conviction for the offense. What's not being appealed here is the determination that he was insane, and so he's not criminally liable. I'm attacking the conviction part. And Clark makes absolutely clear that that's the progression. There is a finding that he committed the offense. All right, counsel, you've exceeded your time. We'll give you a minute for reply. May it please the Court, George Hardy, Assistant U.S. Attorney, San Diego. Good morning. With respect, Your Honors, we really shouldn't be here today. The criminal case is over. The defendant won. He got what he asked for. And there's been no judgment. There's been no conviction. There's been no sentence. So this appeal should not stand. There was a criminal trial and a jury verdict that results in life supervision. Possibly. Your Honor, what has occurred is that he submitted evidence and proved to this jury, by clear and convincing evidence, that his client was insane. And so based on the instructions, the jury came back with not guilty by reason of insanity. That's the end of the criminal case. What happens as a result of sections 4241 through 4248 is the imposition of civil commitment procedures. That's what's happening now. It has nothing to do with the culpability or lack of culpability of the defendant. It has to do with his dangerousness to himself and the community and whether or not he's going to hurt anybody in the future. He's subject to supervision that is routinely monitored based on those issues of dangerousness. Who supervises? The probation office. Okay. So generally probation office does not supervise criminal, I mean civil. Civil. That's correct, Your Honor. It's a bit of a close call. I mean, that's an odd little mixture there because it does seem like a criminal kind of conviction. But the case authorities are all very clear, Supreme Court and Ninth Circuit, saying these procedures are civil. They're regulatory. There's no right to counsel in certain situations. There's no right to jury trial in certain issues. Except that you have the involvement of the criminal probation offices. You do because they're the available. It's an ordinary civil arena. That's correct. That's correct because they have the skills to provide that kind of supervision. Nevertheless, that takes it outside that arena which makes it difficult for us to determine. For me, I should not speak for my colleagues. It makes it difficult for me to say that this is not equal to a sentence. I mean, it's very clear. No, it's clearly not a sentence. It's clearly not. Legally, it is not a sentence. Well, it's in the nature of a post-conviction. There's been no conviction, Your Honor. Well, I said it's in the nature of because otherwise you wouldn't have supervised me. That's correct. If it had not been a prosecution, there wouldn't have resulted in this civil commitment. Well, you can have a prosecution and an acquittal and you don't have anything else. That's very true. So that's the thing that makes this a little bit different in terms of deciding whether or not an appeal should lie. I mean, if there had been an acquittal, it would be easy. If there had been a conviction, it would be easy. But we're in the middle. That's correct. And nobody's saying that this is a clear call because I couldn't find any specific case directly on point. What I'm trying to provide the Court is the context in which the issue should be evaluated. And the context is a fairly recent one. 1984 was when Title 18, Section 17 was passed, which created the affirmative defense of insanity. And at the same time, these civil commitment procedures went into effect. And most of the cases that are recited in both of our papers, the Curry case and all the other cases, dealt with State procedures and earlier procedures. So I could find no case directly on point. My argument to you that was based on the statute and the reality that there is no criminal case anymore and he's under supervision based on issues of dangerousness to the community, not the cause of the crime. I don't know why you think that habeas is an appropriate way to go after the questions of dangerousness and so on. That's something we can't do on appeal. But what do you do with the argument of your opponent that, look, what I really wanted was an acquittal and I didn't get the instruction that would have permitted me to get an acquittal? Correct. And I ought to be able to appeal that because I got something less favorable than an acquittal. I appreciate the argument and understand the argument. And, frankly, I'm sympathetic to that argument. And I think the rules of 4241 to 4248 take that into consideration. Because in 4247G, it specifically provides for habeas corpus and it says habeas corpus can be used to explore whether the detention is illegal, the illegality of the detention. And in my way of thinking, that means he can explore whether or not he got to this place by improper procedures, whether or not he was unconstitutionally denied a right to a defense. Well, unconstitutionally is a high standard. Yes, it is. And it's on an appeal. The question is, was there error? That's correct. But all I'm suggesting to you that appeal is not a constitutional right. It's a right only provided by statute. And this is the only statutory authority. The only statutory authority provided by appellant is Title 28, Section 1291, which is a final decision of the court. But not guilty is a final decision of the court, too. And he's not arguing that that's appealable. Well, not guilty, you haven't been agreed. If you get a not guilty verdict, you haven't been agreed. So that's a different situation. That's correct. And that's why I'm stressing to the court that the aggrievement has nothing to do with his criminal culpability, if he had any. But he doesn't. It has to do with dangerousness. When we're looking at finality, we're looking at whether or not there's anything left for the court to do. So if the criminal case is totally over. Such as not guilty. And there's nothing left. Well, but the not guilty implies that there's no aggrievement. So that's a different situation. But if there's nothing else left for the court to do, why isn't that a final judgment if that's how we look at whether or not there is a final judgment? Well, I think maybe we get back to the question or the issue raised by Judge Canby. What do we do? Do we send it back for a new trial? Is the judgment, which is not guilty by reason of insanity, withdrawn and we start over again with a new trial? Well, before we even get there, we look at whether or not there's merit to his issues. And that's the point of determining whether or not there's finality is to determine whether or not we can review the issues that are raised. Not what we do if we agree with his issues, but whether or not we even reach the merits of the issue. I understand. And I think the court is focusing in on the aggrievement issue. And all I can do is repeat what I've said. That it's civil. That it's civil. With regard, though, to the issue of sending it back for a new trial, I'm not sure we can do that. I think jeopardy has attached and now it's over. And I think there are real double jeopardy issues about starting over again. And, in fact, the case of Scott. We retry convictions all the time and nobody ever raises a double jeopardy. But this is not guilty by reason of insanity. And such a factual finding does necessarily establish the criminal defendant's lack of criminal culpability. That's a finding. I'm not sure we can. And that's Scott, United States v. Scott, 437 U.S. 82 Supreme Court case. Based on that case, I have real concerns about whether or not this case could be tried again on double jeopardy grounds. But you've heard my argument about why I think we shouldn't be here today. So you think that the defendant should be limited to habeas relief? I think he can do two things, at least. One is the habeas to challenge the illegality of his detention. Or he can certainly appeal the conditions of his release. That is an order, a final order of the court, which can be reviewed as a final order. It doesn't need to be a collateral order, which I think is the argument that he's making. That can be appealed at any time. That's a final order in place. So he has two avenues. His remedy, he's not without remedy, in other words. But let's assume we are here appropriately and that the merits are in front of this panel. I think Jim is the law of the circuit. This panel cannot overturn Jim. Jim says that 111 is a general intent crime. Diminished capacity is not available on a general intent crime. I'm not sure we can go beyond that. I think that basically is it. There's no other circuit. Now, he mentioned three circuits that he claimed had said that 111 is a specific intent crime, and I would dispute that. I think he said the First, Tenth, and Eleventh. And I know the Tenth and Eleventh have not said that. I don't know the case that he's relying on for the First. It doesn't really matter if the Ninth Circuit has said to the contrary. Correct. Some of the other circuits, though, have specifically addressed diminished capacity, whereas Jim just referenced a different affirmative defense, that is voluntary intoxication. So the other circuits are even a little stronger than Jim on this point. Willfulness is not an element of 111. FIOLA didn't make it an element. No case has ever said willfulness is an element, even if it were an element. Well, it's not, and therefore it wasn't included in the indictment. In fact, it was removed. We superseded the indictment because we had erroneously put it in there initially and realized that fact and took it out. The intent element is intentionally do that which the law prohibits. That was in the elements of the offense that went back to the jury. That's what FIOLA says. So willfulness is not an element, did not need to be included in the indictment, and did not need to be instructed on. The only other issue that the defendant raised, appellant raises on appeal, is that 111 is barred by Apprendi. It has an Apprendi problem because it has sentencing enhancements, and I think the Chapman case pretty much did away with that issue, saying that there are three distinct offenses within 111. Each of those offenses must be alleged and proved to the jury beyond a reasonable doubt. So thank you for your time. Unless the Court has questions, I'll be off. It appears not. Rebuttal? I'm surprised that the government says willfulness is not an element. Jim itself clearly says it, along with a number of other Ninth Circuit cases, including Somerset. I'm looking at Jim right now, page 213, cites Dupree to the effect that willful, and willful is an italics, is an element, and then says we define willfulness as a specific intent to do an act forbidden by law. The Court next says, without a congressional purpose analysis, 111 appears to be a specific intent crime. And then that suggests that they say more after that. But they don't say that it's not an element, and they don't say that willfulness doesn't mean a bad purpose. They just say because Congress wants to protect federal officers, we're going to construe it as general intent, which to me is an extraordinary way to go about statutory construction. We've got a federal officer here. But the policy here is not implicated, because in Jim you have someone who's drunk and going around acting crazy. Here you have someone who is crazy and acting crazy, who has no wrongfulness in his mental state. That's something that's just there. He didn't do anything purposely to get there. Doesn't the Ninth Circuit jury instructions also, they do not suggest that willfulness is an element, and they're really trying to interpret Jim, aren't they? Well, the Ninth Circuit jury instructions are incorrect. Well, I know that's your argument. I'm just trying to suggest you read Jim one way, and I appreciate your read, but I guess I'm trying to figure out if that's the way it is, why did the Ninth Circuit instruct their instructions in such a way as if willfulness was not an element? Of course, there are no Ninth Circuit judges on the panel that comes up with those model jury instructions. Oh, I understand that. I don't know that that's true. Well, they're district judges. But I don't know, I can't speak for why they did what they did. But I can point out, other than the fact that, of course, Jim and Summers had a number of cases say that willfulness is an element, that the U.S. Attorney's Office involved in this very case, in the recent Chapman case, filed a bill of particulars in that case saying willfulness is an element of 111. I mean, it's as clear as day, and the government conceded it, and they conceded as much in this case. They just pulled it out of the indictment and filed a superseding because it was inconvenient with respect to the issues. All right, counsel, you've exceeded your time. Thank you to both counsel. The case just argued is submitted for decision by the court. The final case on calendar for argument is United States v. Norris.
judges: Canby, Rawlinson, Smith N. R.